UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
SAM STERN,

                                  Plaintiff,

                    -against-

COUNTY OF NASSAU, KEVIN P. MCEVOY, JR., individually and in his official capacity, JOHN DOES #1-10 (representing as yet unknown and unidentified members of the Nassau County Police Department), individually and in their official capacities, and JOHN DOES #11-20 (representing as yet unknown and unidentified members of the Nassau County District Attorney's Office) individually and in their official capacities,

                                 Defendants.
------------------------------------------------------------------------ X

**DOCKET NO.:**

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff SAM STERN (hereinafter, "Stern" and/or "Plaintiff"), by his attorneys, The Russell Friedman Law Group, LLP, complaining of Defendants, alleges as follows:

**PRELIMINARY STATEMENT**

1. This is a civil rights action for money damages against Defendants COUNTY OF NASSAU, KEVIN P. MCEVOY, JR., individually and in his official capacity, JOHN DOES #1-10 (representing as yet unknown and unidentified members of the Nassau County Police Department), individually and in their official capacities, and JOHN DOES #11-20 (representing as yet unknown and unidentified members of the Nassau County District Attorney's Office), individually and in their official capacities, for committing acts under color of law and depriving Plaintiff Stern of his rights secured by the Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments of the Constitution and laws of the United States.

2. Plaintiff seeks damages, both compensatory and punitive, award of costs, interest, attorney's fees, and such other and further relief as this Court deems just and equitable.

## JURISDICTION

3. This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments of the United States Constitution. Jurisdiction is conferred upon this Court by 42 U.S.C. § 1983 and by 28 U.S.C. §§ 1331 and 1343(3) and (4) of the aforementioned constitutional provisions.

## VENUE

4. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) since all of the events and omissions giving rise to Plaintiff's claims occurred within the County of Nassau, the actual place of employment of all of the individual Defendants is the County of Nassau in the Eastern District of New York, and the County of Nassau is within the jurisdiction of the Eastern District of New York. The events surrounding this lawsuit occurred in the County of Nassau, in the Eastern District of New York. Additionally, Plaintiff resides with the County of Nassau in the Eastern District of New York.

## THE PARTIES

5. Plaintiff SAM STERN is a resident of the United States who lives within the Eastern District of New York.

6. Upon information and belief, at all relevant times described herein, Defendant COUNTY OF NASSAU (hereinafter, referred to as "County") was and continues to be a municipal corporation organized and existing by virtue of the laws of the State of New York.

7. Upon information and belief, at all relevant times described herein, Defendant County, by its agents and/or employees, operated, maintained, and controlled the Nassau County

Police Department (hereinafter, referred to as "NCPD"), including all police officers and detectives thereof.

8. Defendant KEVIN P. MCEVOY, JR. (hereinafter, referred to as "McEvoy"), upon information and belief, is a police officer with the NCPD who is being sued in his individual and official capacity and is an employee of Defendant County. Upon information and belief, at all relevant times described herein, Defendant McEvoy was acting under color of state law within the scope of his employment as a police officer with NCPD.

9. Defendant, JOHN DOES #1-10 (hereinafter, collectively "PD Does") are members of NCPD who are being sued in their individual and official capacities and are employed by Defendant County. Upon information and belief, at all relevant times described herein, PD Does were acting under color of state law within the scope of their employment as members of the Nassau County Police Department and employed by Defendant County.

10. Defendant, JOHN DOES #11-20 (hereinafter, collectively "ADA Does") are members of the Nassau County District Attorney's Office (hereinafter, referred to as "NCDAO") who are being sued in their individual and official capacities and are employed by Defendant County. Upon information and belief, at all relevant times described herein, ADA Does were acting under color of state law within the scope of their employment as members of NCDAO and employed by Defendant County.

## NATURE OF THE CASE

11. This is an action seeking recovery for deprivation of Plaintiff's civil rights guaranteed to him under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution committed by the above-named municipal Defendants.

12. Plaintiff Stern was subjected to arrest, criminal charges, and commencement of

criminal proceedings based on perjurious testimony, material misrepresentations, and fabricated evidence presented by Defendants at the Nassau County District Court, Criminal Part, Hempstead, New York on or about September 15, 2019, and the filing of misdemeanor information on or about September 16, 2019.

13. The criminal proceedings were favorably terminated on or about July 17, 2020.

14. Plaintiff was subjected to degrading and abusive treatment, unlawful search, unlawful arrest, malicious prosecution, denial of his right to familial association, unlawful detention, illegal restraint, an unlawful disruption of familial relations, and violation of his substantive and procedural due process rights under the laws of the United States.

## FACTUAL ALLEGATIONS

15. Mr. Stern is a 41-year-old man who is employed as a Senior Director, Technical Applications + Integration at the Hospital for Special Surgery. Mr. Stern has four (4) children.

16. On the date and time of the incident, Mr. Stern was married to Stephanie Stern ("Stephanie") and they both resided at the marital residence located in Bellmore, New York, with their four (4) children.

17. Mr. Stern and his wife had resided at the same address in Bellmore, Nassau County, New York for approximately seven (7) years.

18. On the date and time of this incident, Mr. Stern and Stephanie were engaged in a contested matrimonial litigation captioned *Stephanie Stern v. Sam Stern*, Index No.: 201618/2019, pending before the Honorable Jeffrey A. Goodstein in Nassau County Supreme Court.

19. Mr. Stern and Stephanie's matrimonial litigation involved, *inter alia,* issues of custody and parenting time of their four (4) children. Relevant to such inquiry, which utilizes the

extremely broad and all-encompassing standard "best interest of the child," is the home life of the parties and their children.

20. On or about September 15, 2019, Plaintiff was at his then marital residence located in Bellmore, New York when Defendants McEvoy and PO Does arrived.

21. Upon information and belief, Stephanie had contacted 911 soon after arriving at the marital residence following a verbal dispute with Plaintiff.

22. Stephanie complained that, upon arriving at home, "Sam Stern began immediately video recording me on his cell phone and followed me around the house for about fifteen minutes." Stephanie further stated to Defendants McEvoy and PO Does that she had recently obtained an order of protection.

23. Upon information and belief, Defendants McEvoy and/or PO Does contacted ADA Does at the Early Case Assessment Bureau (hereinafter, referred to as "ECAB") of the NCDAO.

24. Upon information and belief, Defendants ADA Does, McEvoy, and/or PO Does, after conferring, decided without any factual or legal basis, to arrest and charge Plaintiff with Criminal Contempt 2nd Degree in violation of NY PL § 215.50 (03).

25. NY PL § 215.50 (03) states as follows:

> A person is guilty of criminal contempt in the second degree when he engages in any of the following conduct:
>
> 3. Intentional disobedience or resistance to the lawful process or other mandate of a court except in cases involving or growing out of labor disputes as defined by subdivision two of section seven hundred fifty-three-a of the judiciary law.

26. Defendants had neither valid evidence for the arrest of Plaintiff nor legal cause or excuse to seize and detain him.

27. That, in detaining Plaintiff without a fair and reliable determination of probable cause, Defendants abused their power and authority as a policymaker of the NCPD and NCDAO under the color of State and/or local law. It is alleged that Defendant County, via its agents, servants, and employees routinely charged persons with crimes they did not commit. Plaintiff was but one of those persons.

28. Defendants, without any investigation and/or basis, unlawfully arrested and interrogated Plaintiff.

29. On or about September 15, 2019 at approximately 5 p.m., Defendants arrested Plaintiff in the street in front of the neighbors while his one-year old child was in the home and transported to the 7th Precinct for processing. All the while Defendants knew that Plaintiff Stern was completely innocent and there was no probable cause to arrest Plaintiff.

30. Upon information and belief, Plaintiff was thereafter transported to NCPD headquarters where he was further processed and placed in a holding cell and kept overnight until arraignment the next day.

31. Plaintiff was arraigned and charged with Criminal Contempt in 2nd Degree in violation of NY PL § 215.50 (3), a class A Misdemeanor. Plaintiff was released on his own recognizance.

32. Defendant McEvoy signed the accusatory instrument for the prosecution of Plaintiff Stern, dated September 15, 2019.

33. Defendants had no evidence to substantiate the charges. The prosecution of Plaintiff was continued with malice.

34. The prosecution of Plaintiff was continued after probable cause was vitiated. In point of fact, Defendants all along had irrefutable evidence of Plaintiff's innocence via Plaintiff's

audio and video recordings as well as security video evidence. Mr. Stern repeatedly offered to show Defendants McEvoy and/or PO Does the videos and audio which unequivocally showed that Stephanie had lied. Despite this, Mr. Stern was arrested and his prosecution was continued, despite knowledge that such arrest and prosecution was unlawful and in violation of Plaintiff's rights.

35. Defendants had in their possession all of the information which would have exculpated Plaintiff from the onset.

36. Plaintiff Stern's prosecution continued after there was no longer probable cause to believe that Plaintiff had any involvement in any of the alleged and charged crimes. The prosecution was continued solely to cover-up Defendants' unlawful and unconstitutional conduct.

37. As a result of the malicious prosecution, Plaintiff Stern was required to pay for the services of a criminal defense attorney at a substantial cost to him. Information about the arrest and/or prosecution was intentionally and maliciously released to the public, impugning Plaintiff's reputation and causing Plaintiff shame and humiliation.

38. Plaintiff was required to appear in court after Defendants had incontrovertible evidence that Plaintiff was not involved in the alleged crimes he was arrested and charged with.

39. Plaintiff Stern's prosecution terminated on or about July 17 2020, when the Honorable Joy M. Watson dismissed the accusatory instrument.

**AS AND FOR A FIRST COUNT**
**42 U.S.C. § 1983 – False Arrest**
**(Against All Defendants)**

40. Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

41. That the aforesaid arrest and imprisonment of Plaintiff by Defendants was under the color of State Law, without any reasonable cause or belief that Plaintiff was in fact guilty of the crime for which he was charged.

42. That said Defendants, their agents, servants, and employees falsely arrested and illegally imprisoned Plaintiff and intentionally subjected Plaintiff to confinement which Plaintiff was conscious of, and said confinement was not otherwise privileged or consented to by Plaintiff.

43. That by reason of the aforesaid unlawful arrest and imprisonment, caused willfully and maliciously by Defendants, their agents, servants, or employees, Plaintiff was wrongfully deprived of his rights and privileges and benefits as provided to him under the Constitution of the United States of America, was subjected to pain and suffering, great indignities, ridicule, scorn, loss of freedom, humiliation, mental distress, was prevented from attending his usual activities was injured in his reputation in the community, and was further caused to incur monetary expense, including legal fees.

44. That the aforesaid false arrest and imprisonment of Plaintiff violated the Fourth Amendment of the United States Constitution.

45. That Defendants committed the foregoing acts willfully and with malicious disregard for Plaintiff's rights and are, therefore, liable to Plaintiff for compensatory as well as punitive damages.

46. As a proximate result of Defendants' intentional and malicious actions, Plaintiff Stern was greatly humiliated, injured in his reputation, caused to incur attorney's fees, associated legal expenses, and other special damages, and has suffered great mental anguish causing damages, all to Plaintiff's damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS ($10,000,000.00), plus punitive damages, attorney's fees, and costs.

### AS AND FOR A SECOND COUNT
### 42 U.S.C. § 1983 – Malicious Prosecution
### (Against All Defendants)

47. Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

48. That Defendants instituted and continued the criminal proceedings against Plaintiff in the absence of any probable cause and/or evidence for said prosecution.

49. That the prosecution against Plaintiff was with malice.

50. That the dismissal against Plaintiff was a favorable termination in favor of Plaintiff.

51. That said malicious prosecution of Plaintiff by Defendants constitutes a deprivation of Plaintiff's Fourth Amendment Constitutional right.

52. As a proximate result of Defendants' intentional and malicious actions, Plaintiff Stern was greatly humiliated, injured in his reputation, caused to incur attorney's fees, associated legal expenses, and other special damages, and has suffered great mental anguish causing damages, all to Plaintiff's damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS ($10,000,000.00), plus punitive damages, attorney's fees, and costs.

### AS AND FOR A THIRD COUNT
### 42 U.S.C. § 1983 – Failure to Intervene
### (*Against All Defendants*)

53. Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

PF/D244827/FL3207

54. On or about September 15, 2019, Plaintiff was subjected to false arrest and unlawful search and seizure of Plaintiff's person and home at the hands of Defendants.

55. Despite Defendants having irrefutable evidence of Plaintiff's innocence, Defendants nonetheless arrested Plaintiff.

56. Each of the Defendants new and/or deliberatively ignored the fact that the false accusations, detainment, false arrest, seizure, and illegal search of Plaintiff's home violated the rights guaranteed to Plaintiff under the First, Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution and 42 U.S.C. § 1983.

57. Each of the said Defendants had the authority, ability, and concurrent duty under 42 U.S.C. § 1983 to prevent the false arrest, wrongful detainment, and illegal search of Plaintiff, yet neglected to prevent said violations from occurring and, further, failed to intervene to protect or aid Plaintiff when such violations did, in fact, occur.

58. Specifically, each and every one of the Defendants had the opportunity and responsibility to prevent the wrongful detainment and abuse of process against Plaintiff because each Defendant had actual notice of the wrongful actions of the other Defendants at the scene of the incident.

59. Defendants had the power to prevent the continued due process violations against Plaintiff yet failed to prevent or dismiss the unlawful charges against Plaintiff, or to protect Plaintiff from the unwarranted penalties that followed from the charges against him.

60. As a direct consequence of the actions of Defendants acting in furtherance of their duties as agents of their respective municipalities and agencies, Plaintiff suffered injuries, including but not limited to, stigmatizations, embarrassment, loss of liberty, and the infringement of his rights guaranteed to him under the U.S. Constitution.

61. As a direct consequence of the actions of Defendants, Plaintiff Stern suffered loss of standing in the community, loss of time, loss of freedom, loss of quality of life, damage to his name and reputation, special damages, attorney's fees, incidental fees/costs, loss of property, and other financial impairments.

62. That, by reason of the foregoing, Plaintiff Stern suffered and continues to suffer irreparable injury and monetary damages, was greatly humiliated, injured in his reputation, caused to incur attorney's fees, associated legal expenses, and other special damages, and has suffered great mental anguish causing damages, all to Plaintiff's damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS ($10,000,000.00), as well as punitive damages, attorneys' fees and costs.

### AS AND FOR A FOURTH COUNT
*Monell*
**(Against Defendant County)**

63. Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

**Failure to Supervise and Failure to Train**

64. Defendant County was responsible for supervising, overseeing, and controlling its respective subordinates.

65. Defendant County had an express and/or implied duty to provide a reasonably safe environment for its citizens, including Plaintiff. At a minimum, it had a duty to keep him from being falsely arrested and maliciously prosecuted by its employees, which was foreseeable based upon past instances of misconduct, which were known to Defendant County.

66. Defendant County had an express and/or implied duty to provide a reasonably safe environment for its citizens, including Plaintiff. At a minimum, it had a duty to assure that its employees did not wrongfully and falsely arrest Plaintiff, which was foreseeable based upon past instances of misconduct, which were known to Defendant County.

67. Despite having this knowledge, Defendant County failed to take any remedial measures to prevent the aforementioned violations of Plaintiff's Constitutional rights.

68. The countenancing of this behavior created an environment within the NCPD and NCDAO wherein members were allowed to continue with their behavior, which led to the Constitutional rights of citizens being violated, including Plaintiff.

69. Defendant County intentionally failed to adequately supervise, control, oversee, train, and/or monitor its employees and members, who had a history of engaging in official misconduct, and failed to implement measures to prevent its employees and members from conspiring with each other to cover up their official misconduct.

70. Defendant County intentionally failed to adequately supervise, control, oversee, train, and/or monitor its employees and members from conspiring with each other to cover up their official misconduct and prevent them from continuously violating the Constitutional rights of individual citizens, including Plaintiff.

71. Defendant County negligently hired, retained, and/or supervised its employees and members when it knew or should have known that they posed a threat to individuals.

72. Defendant County knew or should have known of its employees and members' propensity for the conduct which caused Plaintiff's injuries, prior to the occurrence of the injuries.

73. At all times relevant hereto, Defendants' actions were willful, wanton, malicious, reckless, and/or outrageous in their disregard for the rights and safety of Plaintiff.

74. Defendant County was aware that there was a substantial likelihood that permitting its employees and members to carry on their regular duties would deprive the public of their civil rights, but failed to take adequate measures to resolve the wrong.

75. Defendant County's failure and refusal to adequately investigate its employees' actions, acquiescence in Defendants' conduct, failure to take any remedial action against Defendants, allowing Defendants to remain employed as police officers and/or assistant district attorneys, gross negligence in its supervision of Defendants, and deliberate indifference to the rights of others by failing to act on information that Constitutional rights were being violated, subjects Defendant County to supervisory liability for the crime and Constitutional violations perpetrated against Plaintiff.

76. That, by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages, was greatly humiliated, injured in his reputation, caused to incur attorney's fees, associated legal expenses, and other special damages, and has suffered great mental anguish causing damages, all to Plaintiff's damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS ($10,000,000.00), as well as punitive damages, costs and attorneys' fees, and any other relief this Court may find just and proper.

**Custom, Policy, and Practice**

77. It was the custom, policy, and practice of Defendant County to tolerate, condone, and encourage constitutional violations, such as those alleged by Plaintiff above, by failing to properly punish, charge, reprimand, and investigate allegations and incidents of misconduct by its employees and members.

78. Employees and members of the County, such as the Individual Defendants in this action, were aware at all times alleged in this Complaint that their unconstitutional conduct would

not be investigated or questioned, and that they would receive no reprimand or be punished for their conduct.

79. Employees of County, such as the Individual Defendants in this action, were aware at all times alleged in this Complaint that their unconstitutional conduct would not be investigated or questioned, and that they would receive no reprimand or be punished for their conduct and, further, that they would be indemnified from civil liability regardless of the illegality or unconstitutionality of their actions.

80. By failing to supervise, train, and reprimand such County employees and members of NCPD and NCDAO caused the injuries to Plaintiff through the actions and inactions of the Individual Defendants.

81. By maintaining a *de facto* policy of automatic indemnification, Defendant County caused the injuries to Plaintiff through the actions and inactions of the Individual Defendants.

82. It was the custom, policy, and practice of Defendant County to blatantly ignore complaints and/or widespread allegations of malfeasance in order to shield the NCPD and NCDAO from receiving any bad press that would be generated from an investigation of police misconduct and/or misconduct by assistant district attorneys.

83. This custom, policy, and practice of Defendant County to ignore complaints and/or widespread allegations of assault and other malfeasance created an environment where foreseeable constitutional violations by their employees and members were rampant, including the violations of Plaintiff's constitutional rights.

84. Defendant County's failure to take action against its employees and members involved in this incident and in other similar incidents was part of a custom, practice, and procedure of neglect and deliberate indifference that directly caused the injuries to Plaintiff.

85. As authorized representatives of Defendant County, the employees and members' conduct of illegal arrests or threats of arrest without probable or reasonable cause, searches and seizure of arrestees, and malicious prosecutions constituted a custom, policy, and practice which renders Defendant County liable to Plaintiff as a "Person" acting under the color of state law.

86. Defendant County is, therefore, liable for violations of Plaintiff's Constitutional rights as caused by the Individual Defendants, as described in more detail in the foregoing paragraphs, and Plaintiff has suffered damages therefrom.

87. That, by virtue of Defendant County's failure and refusal to adequately investigate the Individual Defendants' actions, acquiescence in the Individual Defendants' conduct, failure to take any remedial action against the Individual Defendants, allowing the Individual Defendants to remain employed, gross negligence in its supervision of the Individual Defendants, and deliberate indifference to the rights of others by failing to act on information that constitutional rights were being violated by the Individual Defendants, Defendant County, which employed these Individual Defendants and policymakers during the relevant time period, exhibited a *de facto* custom, policy, or usage of unconstitutional conduct sufficient for the imposition of municipal liability under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

88. As a proximate result of Defendant County's customs, policies, and practices for creating an environment that tolerates, encourages, and condones such constitutional violations, Plaintiff was greatly humiliated, injured in his reputation, caused to incur attorney's fees, associated legal expenses, and other special damages, and has suffered great mental anguish causing damages, all to Plaintiff's damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS ($10,000,000.00) plus attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants as follows:

A. Under the First Count, in the amount of TEN MILLION DOLLARS ($10,000,000.00) plus punitive damages, attorney's fees, and costs;

B. Under the Second Count, in the amount of TEN MILLION DOLLARS ($10,000,000.00) plus punitive damages, attorney's fees, and costs;

C. Under the Third Count, in the amount of TEN MILLION DOLLARS ($10,000,000.00) plus punitive damages, attorney's fees, and costs;

D. Under the Fourth Count, in the amount of TEN MILLION DOLLARS ($10,000,000.00) plus attorney's fees and costs; and

E. Such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
April 28, 2022

> Respectfully Submitted,
> **THE RUSSELL FRIEDMAN LAW GROUP, LLP**
> *Attorneys for Plaintiff Sam Stern*
>
> By:   */S/Pablo A. Fernandez*
> Pablo A. Fernandez
> 400 Garden City Plaza, Suite 500
> Garden City, New York 11530
> Ph: 516.355.9696
> pfernandez@rfriedmanlaw.com